FILED BY [signature] D.C.
05 OCT 18 AM 10: 36
THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

**ANA PATRICIA CHAVEZ,**
**CECILIA SANTOS,**
**JOSE FRANCISCO CALDERON,**
**JANE DOE and JOHN DOE,**

**Plaintiffs,**

**v.** **No. 03-2932 Ml/P**

**NICOLAS CARRANZA,**

**Defendant.**

**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND IN ADDITION THERETO OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Before the Court is the Motion of the Defendant, Nicolas Carranza, for Judgment on the Pleadings, and in Addition Thereto or in the Alternative, for Summary Judgment, filed June 24, 2005. Plaintiffs responded in opposition on July 27, 2005. For the following reasons, the Court DENIES Defendant's motion.

**I. Background**

Plaintiffs, who are or were at all pertinent times citizens of El Salvador, filed their original complaint in this action pursuant to the Torture Victims Protection Act ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (enacted March 12, 1992)(codified as Note to 28 U.S.C. § 1350), and the Alien Tort Claims Act



This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 10-18-05

97

("ATCA"), 28 U.S.C. § 1350, on December 10, 2003. Plaintiffs filed an Amended Complaint on July 29, 2004, and a Second Amended Complaint on June 20, 2005. Plaintiffs allege that Defendant is liable for the extrajudicial killings and/or torture of themselves or members of their immediate families that were committed by the Salvadoran Security Forces or the Salvadoran Treasury Police in the early 1980s.

According to Plaintiffs, Defendant, Nicolas Carranza, served as El Salvador's Subsecretary of Defense and Public Security, from about October, 1979, until January, 1981, during which time he "exercised command and control over the three units of the Salvadoran Security Forces--the Guardia Nacional ('National Guard'), Policia Nacional ('National Police'), and Policia de Hacienda ('Treasury Police')." (Second Am. Compl. at 2-3.) He served as Director of the Treasury Police from about June, 1983, until May, 1984, during which time he "possessed and exercised command and control over the Treasury Police." (Id. at 3.) Plaintiffs' Second Amended Complaint alleges that Mr. Carranza "exercised command responsibility over, conspired with, or aided and abetted subordinates in the Security Forces of El Salvador, or persons or groups acting in coordination with the Security Forces or under their control, to commit acts of extrajudicial killing, torture, and crimes against humanity, and to cover up these abuses." (Second Am. Compl. ¶ 2.) Defendant has resided in the United States since 1984 and is currently a resident of

Memphis, Tennessee.

Defendant filed a Motion to Dismiss on January 20, 2004, arguing that Plaintiffs' claims are barred by the statute of limitations and that this Court lacks subject matter jurisdiction. Defendant then filed a Renewed Motion to Dismiss on March 9, 2004, setting forth similar arguments to those made in the original Motion to Dismiss. The Court denied Defendant's motions on September 30, 2004.

Defendant moves for judgment on the pleadings and/or summary judgment on three grounds: (1) the claims of each Plaintiff are time-barred; (2) Plaintiffs' claims are barred under Salvadoran law, and the United States "should give full faith and credit to the sovereign legal laws of the nation of El Salvador by reason of the accord of nations and comity between nations and the common law doctrine of full faith and credit"; and (3) there is no genuine issue of material fact as to any of Defendant's affirmative defenses. (Mot. J. Pleadings, or in the Alternative, Summ. J. ¶¶ 1-3.)

**II. Standard of Review**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Abeita v. TransAmerica Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

The standard of review for a judgment on the pleadings is

the same as that for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir. 1998). "We must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." E.E.O.C. v. J.H. Routh Packing Co., 246 F.3d 850, 851 (6th Cir. 2001)(quotation omitted).

## III. Analysis

### A. Statute of Limitations and Equitable Tolling

Defendant acknowledges that this Court has previously ruled that "extraordinary circumstances" warrant the equitable tolling of the applicable statute of limitation in this case. Defendant urges the Court to reconsider its ruling in light of the Eleventh Circuit's recent decision in Arce v. Garcia, 400 F.3d 1340 (11th Cir. 2005), which held that plaintiffs' claims under the ATCA and the TVPA against former officials in the government of El Salvador during the 1980s were time-barred. The Court declines to do so.

Arce involved claims under the ACTA and the TVPA against the former minister of defense of El Salvador and the former director-general of El Salvador's National Guard during the late 1970s and early 1980s. The plaintiffs were three Salvadoran individuals who claimed they were tortured by government soldiers

during the country's civil war. At trial, the jury found for the plaintiffs, and the defendants appealed, arguing that the district court erred by failing to dismiss the plaintiffs' claims as time-barred under the relevant statutes of limitation. The Court of Appeals for the Eleventh Circuit held that the plaintiffs "failed to present sufficient evidence . . . [to] satisfy the requirements for equitable tolling" and therefore, their claims were time-barred. The court vacated the jury's verdict and dismissed the plaintiffs' claims. Id. at 1345, 1351.

On August 5, 2005, however, after Defendant filed his motion for judgment on the pleadings and/or summary judgment, the Eleventh Circuit vacated its order in Arce without explanation.[1] Since the Arce opinion has been vacated, it has little persuasive effect, and this Court will not revisit its previous ruling in light of the Eleventh Circuit's analysis. Even if the Arce opinion had not been vacated, however, it does not constitute authority binding on this Court.

Moreover, the holding in Arce does not compel a different result in this case, as this Court has already examined Defendant's statute of limitations argument at length. In its order denying Defendant's motions to dismiss, the Court rejected Defendant's position—that the ten-year statute of limitations

[1] Plaintiffs submitted a copy of the order to this Court on August 24, 2005. (See Notice of Supp. Authority Support Pls.' Opp. to Def.'s Mot. Summ. J.)

should not be equitably tolled—after careful consideration of both the facts and applicable case law. Accordingly, Defendant's motion for judgment on the pleadings and motion for summary judgment on this ground is DENIED.

**B. Doctrine of Comity**

Defendant next argues that the Court should decline to exercise jurisdiction in this case based on the doctrine of comity and full faith and credit. In particular, Defendant argues that the broad amnesty law passed by the Salvadoran Legislature at the conclusion of the country's civil war "is entitled to full faith and credit and is entitled to recognition in the United States" and "the courts of the United States should not exercise jurisdiction which circumvents the sovereign law of El Salvador." (Def.'s Mem. Support. Mot. J. Pleadings or in the Alternative, Summ. J. ("Def.'s Mem.") at 9.) The amnesty law grants a "broad, absolute and unconditional amnesty . . . in favor of all those who in one way or another participated in political crimes, crimes with political ramifications, or common crimes committed by no less than twenty people, before January 1, 1992." Doe v. Saravia, 348 F.Supp.2d 1112, 1133 (E.D. Cal. 2004)(quoting 2000 Inter-American Commission on Human Rights Decision).[2] The Legislative Assembly of El Salvador adopted the

[2] According to a 1994 report of the Inter-American Commission on Human Rights, the "General Amnesty Law for the Consolidation of the Peace" grants a "full, absolute and unconditional amnesty to all those who participated in any way in the commission, prior to January 1,

law on March 20, 1993, and according to the Saravia court's factual findings, the Salvadoran Supreme Court has twice upheld its constitutionality, in 1993 and 2000, and no prosecutions have taken place under this law. Id.

Plaintiffs argue that Defendant is not entitled to dismissal based on the doctrine of comity because (1) U.S. law and the Salvadoran amnesty law are not in conflict; (2) dismissal on comity grounds would run contrary to the mandate of the TVPA; (3) even if the U.S. law and the amnesty law are in conflict, the Court should not abstain from adjudication; and (4) Defendant's authority is not on point and actually supports Plaintiffs' position. (Id. at 11-16.) The Court finds Plaintiffs arguments persuasive.

International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or other persons who are under the protection of its laws." Hilton v. Guyot, 159 U.S. 113, 164 (1895); see also S&S Screw Mach. Co. v. Cosa Corp., 647 F.Supp. 600, 615 (M.D. Tenn.

---

1992, of political crimes or common crimes linked to political crimes or common crimes in which the number of person involved is no less than twenty." Inter-American Commission on Human Rights, Report on the Situation of Human Rights in El Salvador, Feb. 11, 1994, available at http://www.cidh.oas.org/countryrep/ElSalvador94eng/toc.htm. The slight differences in the language of Saravia and the 1994 report are not important for the purposes of the Court's analysis.

1986)("International comity is the recognition that one nation accords within its territory to the otherwise nonbinding laws of another nation, having due regard both for international cooperation and for the rights of those who seek the protection of the domestic laws.") Comity is a discretionary doctrine. Hilton, 159 U.S. at 163-64 ("'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one hand, nor of mere courtesy and good will, upon the other.") It is "not a rule of law, but one of practice, convenience and expediency." Somportex Ltd. v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 (3d Cir. 1971). The doctrine "neither impels nor obliges the United States district court to decline jurisdiction in a particular case." Bodner v. Banque Paribas, 114 F.Supp.2d 117, 129 (E.D.N.Y. 2000). The party who puts forward the doctrine of comity has the burden to prove that it applies. Sarei v. Rio Tinto PLC, 221 F.Supp.2d 1116, 1200 (C.D. Cal. 2002); Allstate Life Ins. Co. v. Linter Group Ltd., 994 F.2d 996, 999 (2d Cir. 1993).

In order for the issue of comity to arise, there must be an actual conflict between domestic and foreign law. Hartford Fire Ins. Co v. Cal., 509 U.S. 764, 798 (1993); see also Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa, 482 U.S. 522, 555 (1987)(Blackmun, J., concurring and dissenting)("[T]he threshold question in a comity analysis is whether there is in fact a true

conflict between domestic and foreign law."); In re Simon, 153 F.3d 991, 998 (9th Cir. 1998)("[G]eneral principles of international comity . . . [are] limited to cases in which 'there is in fact a true conflict between domestic and foreign law.'"); In re Maxwell Communication Corp., 93 F.3d 1036, 1047 (2d Cir. 1996)("International comity comes into play only when there is a true conflict between American law and that of a foreign jurisdiction.")

Where, as here, "a person subject to regulation by two states can comply with the laws of both[,]" there is no conflict for comity purposes. Hartford Fire Ins. Co., 509 U.S. at 799. An example of a foreign law in "direct conflict" with the ATCA is illustrated in Sarei v. Rio Tinto PLC, 221 F.Supp.2d 116 (C.D. Cal. 2002). In Sarei, the government of Papua New Guinea passed a law that prohibited plaintiffs from filing claims involving local mining and petroleum projects in foreign courts. The court found a "clear . . . conflict between the Act's prohibition on filing claims in foreign jurisdictions and the ATCA's vesting of jurisdiction to hear such claims in the United States." Id. at 1204.

In the instant action, there is no conflict between domestic and foreign laws because El Salvador's amnesty law cannot be construed to prohibit legal claims filed outside of El Salvador. The plain language of the law does not support this reading, and Defendant has not put forward any evidence to show that the law

has an extraterritorial effect. Application of the ATCA or TVPA in United States federal court does not interfere with the application of the Salvadoran amnesty law. Similarly, Plaintiffs may be barred from filing suit in El Salvador, but they are not barred from filing suit under United State law. As there is no conflict of law in this case, Defendant has failed to establish the threshold requirement for the applicability of comity principles.

Moreover, the doctrine of comity is only relevant in the absence of contrary congressional direction; it has "no application" where Congress has spoken on the issue. In re Maxwell Communication Corp., 93 F.3d at 1047. Congress established the TVPA to provide "an unambiguous and modern basis for a cause of action" for torture and summary execution committed anywhere in the world and specifically "authorize[d] the Federal courts to hear cases brought" under the Act. H.R. Rep. No. 102-367(III), reprinted in 1992 U.S.C.C.A.N. at 87 (justifying need for Act on grounds that despite "universal consensus condemning" torture and summary execution, many government still engage in or tolerate these abuses and that judicial redress is often "least effective" in those countries); see also Sosa v. Alvarez-Machain, 542 U.S. 692 (2004)(noting "clear mandate appears in the Torture Victim Protection Act of 1991," that creates basis for federal claims of torture and extrajudicial killing).

Congress has also spoken clearly on the use of the Alien Tort Claims Act, noting that claims by aliens for torts committed "in violation of the law of nations" under the ATCA have been "successfully maintained" and that the TVPA should not replace the ATCA. H.R. Rep. No. 102-367(III), reprinted in 1992 U.S.C.C.A.N. at 86 ("[C]laims based on torture or summary executions do not exhaust the list of actions that may appropriately be covered by section 1350. That statute should remain intact to permit suits based on other norms that already exist or may ripen in the future into rules of customary international law."); see also Kadic v. Karadzic, 70 F.3d 232, 241 (2d Cir. 1995)("The scope of the Alien Tort Act remains undiminished by enactment of the Torture Victim Act.") For the Court to decline jurisdiction in this case in deference to El Salvador's amnesty legislation would run contrary to Congress' clear intent to provide a means for victims of violations of the law of nations to seek redress.[3] Accordingly, the Court DENIES Defendant's motion for judgment on the pleadings and motion for

[3] Defendant relies exclusively on Bernstein v. Van Heyghen Freres Societe Anonyme, 163 F.2d 246 (2d Cir. 1947), to support his comity argument. Specifically, he claims that Bernstein stands for the principle that "one nation should not abrogate or attempt to interpret the acts and laws of a foreign nation, but should accord them full faith and credit or comity." (Def.'s Mem. at 11.) Bernstein does not concern the doctrine of comity, however. It examines the act of state doctrine, a defense which Defendant has not raised. Furthermore, Plaintiffs are not asking the Court to abrogate or interpret the Salvadoran amnesty law; their claims are brought under U.S. law. Defendant's reliance on Bernstein is misplaced.

summary judgment on this ground.

**C. Affirmative Defenses**

Defendant also moves for summary judgment on each of his affirmative defenses. (Mot. Def. J. Pleadings and/or Mot. Summ. J. ¶ 3.) The Court has discussed two of Defendant's affirmative defenses—based on the statute of limitations and the doctrine of comity--above. Defendant's other affirmative defenses, set forth in his Answer, filed June 24, 2005, are: failure to state a claim upon which relief can be granted; the doctrine of latches; denial of due process and equal protection of the law; and that Defendant "has not undertaken any action to personally conceal or hide the claims of the Plaintiffs or to prevent them from commencing legal action against them during the entire period of time he has been in the United States and available for service of process and legal action in the Courts of the United States." (Answer and Aff. Defenses ¶¶ 1-6.) Defendant fails to address any of these affirmative defenses--other than those based on the statute of limitations and doctrine of comity—in his brief to the Court, and as such, Defendant has failed to demonstrate the absence of a genuine issue of material fact on these defenses. Accordingly, the Court DENIES Defendant's motion for summary judgment on his remaining affirmative defenses.

**IV. Conclusion**

For the foregoing reasons, the Court DENIES Defendant's

Motion for Judgment on the Pleadings and in Addition Thereto or in the Alternative, for Summary Judgment.

So ORDERED this 17 day of October, 2005.

Jon P. McCalla

JON P. McCALLA
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 97 in case 2:03-CV-02932 was distributed by fax, mail, or direct printing on October 18, 2005 to the parties listed.

---

David R. Esquivel
BASS BERRY & SIMS PLC
315 Deaderick Street
Ste. 2700
Nashville, TN 37238--000

Carolyn Patty Blum
CENTER FOR JUSTICE & ACCOUNTABILITY
291 West 12th St.
New York, NY 10014

Nicolas Carranza
6530 Red Birch Dr.
Memphis, TN 38115

Matthew J. Eisenbrandt
CENTER FOR JUSTICE & ACCOUNTABILITY
870 Market St.
Ste. 684
San Francisco, CA 94102

Robert M. Fargarson
NEELY GREEN FARGARSON BROOKE & SUMMERS
65 Union Ave.
Ste. 900
Memphis, TN 38103--054

Honorable Jon McCalla
US DISTRICT COURT