**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

FILED BY _____ D.C.

05 OCT 18 PM 1:53

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | | |
|---|---|---|
| ANA PATRICIA CHAVEZ, CECILIA SANTOS, JOSE FRANCISCO CALDERON, ERLINDA FRANCO, AND DANIEL ALVARADO, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 03-2932 M1/P |
| v. | ) ) ) | JURY TRIAL |
| NICOLAS CARRANZA, | ) ) ) | JUDGE McCALLA |
| Defendant. | ) ) | |

## ~~PROPOSED~~ JOINT PRETRIAL ORDER

COME NOW the parties, as evidenced by the signatures below, and respectfully submit this Proposed Joint Pretrial Order pursuant to the Pretrial Procedures attached to the Court's Notice of Re-Setting, dated May 6, 2005.

### I.   Remaining Jurisdictional Questions

There are no remaining jurisdictional questions. The parties agree that the Court maintains subject matter jurisdiction over the action and may exercise personal jurisdiction over the defendant.

### II.   Pending Motions

The plaintiffs filed a motion for partial summary judgment and the defendant filed a motion for summary judgment, both of which have been briefed and are pending.

1. The defendant will file and have a Motion pending requesting that the issues in the case be tried by jury consisting of a minimum of twelve (12) persons.

2. The defendant will file and have pending a Motion to limit the plaintiffs or their representatives and attorneys pre-trial comments to the news media, press, television or radio

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 10-19-05



programs and to limit such information during the trial to avoid prejudice to the defendant and to insure a fair and impartial trial.

3. The defendant will file Motions in Limine to exclude evidence of events and occurrences other than the claims, which the plaintiffs make in this particular case and to otherwise exclude all documents of other events and occurrences or alleged human rights abuses of the military in El Salvador other than those of the plaintiffs.

4. The defendant will further file Motions in Limine to exclude all hearsay evidence from any and all witnesses offered by the plaintiffs or contained in any exhibits offered by plaintiffs' witnesses that are not within the personal knowledge of the plaintiffs.

5. The defendant will file a Motion Bifurcating the Issue of Compensatory Damages from the Issue of Punitive Damages.

6. The plaintiffs will file a motion to exclude the testimony of David Galindo on the grounds that it is irrelevant.

7. The plaintiffs will file various motions in limine to exclude irrelevant issues from being presented to the jury and argued by the defendant at trial.

### III.   Summary of the Case

The parties were unable to arrive at a mutually agreeable Summary of the Case. As a result, the plaintiffs' Summary of the Case and the defendant's Summary of the Case are set forth separately.

1.   <u>Plaintiffs' Summary of the Case</u>

The plaintiffs bring this lawsuit for the human rights abuses they suffered in El Salvador in the early 1980s. The plaintiffs claim that the defendant, who was a Colonel in the Salvadoran military at the time, is responsible for torture, extrajudicial killing, and crimes against humanity

2

based on the law of command responsibility. Three of the plaintiffs allege their family members were civilians who were killed by members of the Salvadoran military and by groups working together with the Salvadoran military. Two of the plaintiffs allege they were tortured while in the custody of the Salvadoran military. The plaintiffs seek compensatory damages from the defendant for the physical and emotional pain they suffered, as well as punitive damages that would punish the defendant and attempt to deter future abuses. The defendant in this case denies that he is responsible for the harm, injury, or death of any of the plaintiffs or their relatives as contended in this case.

2.    Defendant's Summary of the Case

The plaintiffs bring this lawsuit for the human rights abuses they suffered in El Salvador in the early 1980s. The plaintiffs claim that the defendant, who was a Colonel in the Salvadoran military at the time, is responsible for torture, extrajudicial killing, and crimes against humanity based on the law of command responsibility. Three of the plaintiffs allege their family members were civilians who were killed by members of the Salvadoran military and by groups working together with the Salvadoran military. Two of the plaintiffs allege they were tortured while in the custody of the Salvadoran military. The plaintiffs seek compensatory damages from the defendant for the physical and emotional pain they suffered, as well as punitive damages that would punish the defendant and attempt to deter future abuses.

The defendant in this case denies that any act on his part caused harm, injury or death to any of the plaintiffs or their relatives as contended by them in this case. As a matter of fact, the only Party-Plaintiff ever seen by the Defendant is Daniel Alvarado, who admitted assassinating a naval attaché of the United States Embassy in San Salvador. Although he had the opportunity to speak with Defendant Carranza, he never advised him of any acts of torture or physical abuse.

3

Alvarado was a member of the FPL, which claimed responsibility for the assassination of the United States naval attaché. The defendant does not know any of the other plaintiffs and did not know of the acts of which they complained until he was served with a copy of the lawsuit in this case twenty (20) years after the alleged incidents and denies that any act by him caused the injury, death or torture of the plaintiffs or their relatives and that the identity of the perpetrators of the acts is not known by the plaintiffs even today.

### IV.    Contentions of the Parties

1.    Plaintiffs' Contentions

The defendant Nicolas Carranza is liable for the extrajudicial killing, torture, and crimes against humanity committed by his subordinates in the Salvadoran military and by people acting in coordination with members of the Salvadoran military.

Each plaintiff is pursuing his or her own individual claims against the defendant. First, Cecilia Santos claims the defendant is liable for her torture. Second, Francisco Calderon claims the defendant is liable for the extrajudicial killing of his father and for his own torture. Third, Ana Patricia Chavez claims the defendant is liable for the extrajudicial killing of her mother and father, her own torture, and for crimes against humanity. Fourth, Erlinda Franco claims the defendant is liable for the extrajudicial killing of her husband and for crimes against humanity. Finally, Daniel Alvarado claims the defendant is liable for his torture and for crimes against humanity.

The plaintiffs' claims are based on the law of command responsibility. Under this doctrine, the defendant is liable for the abuses suffered by the plaintiffs because (1) a superior-subordinate relationship existed between the defendant and the person or persons who committed the human rights abuses at issue in this case; (2) the defendant knew or should have known that

subordinates had committed, were committing, or were about to commit human rights abuses; and (3) the defendant failed to take all reasonable and necessary measures to either prevent human rights abuses or punish subordinates who committed human rights abuses.

Each plaintiff seeks compensatory damages from the defendant in an amount necessary to compensate him or her for the physical injuries, pain and suffering, mental and emotional distress, and other losses he or she suffered.  Because of the heinous nature of the defendant's conduct and the universal condemnation of human rights abuses, each plaintiff also seeks punitive damages in an amount that will punish the defendant and deter similar conduct in the future.

2.      Defendant's Contentions

The Defendant contends that, as Sub-Secretary of Defense and Public Security in El Salvador, he was a subordinate of the Secretary of Defense and Public Security in El Salvador. As a subordinate, his function was administrative and not operational.  He did not have direct supervisory responsibility or "hands-on" responsibility with the military units in the field.  His principal responsibility was to see that commanders in the field or operational units received the information handed down by General José Guillermo Garcia, who was the Secretary of Defense and the initiator of instructions, orders and discipline.

The Defendant Carranza did not know about the events or occurrences to the Plaintiffs or any members of their families at the time they occurred and his first notice was a receipt of a copy of the original lawsuit filed in this case on the 10th day of December, 2003.

The Defendant contends that, since he did not know of the events that occurred, there is not any action he could have taken to have prevented the occurrences or prevented the harm from taking place at the time they allegedly occurred.

5

Furthermore, with regard to the claims of Ana Patricia Chavez, Cecilia Santos, José Francisco Calderon and Erlinda Franco, the identity of the persons who caused the harm alleged by them is not known and has never been established. The only Plaintiff known to the Defendant is Daniel Alvarado, who confessed to the assassination of the U.S. naval attaché at the U. S. Embassy in San Salvador. Daniel Alvarado was a member of the FPL, which claimed responsibility for the assassination of the U. S. naval attaché, Albert Schaufelberger. Although he was in the presence of the Defendant several times and had the opportunity to revoke his confession in the presence of the news media and in the presence of a military judge, he never did so. The Defendant also states that the Plaintiff, Daniel Alvarado, never informed him that he had been harmed or tortured while in custody and the first notice the Defendant Carranza had of such claims was receiving a copy of the Amended Complaint filed in this cause on February 26, 2004.

## V.      Statement of Uncontested Facts

The following facts are stipulated and uncontested:

a)   From October 1979 to January 1981, Nicolas Carranza was the Subsecretary of Defense and Public Security in El Salvador and a member of the Salvadoran High Command.

b)   While serving as Subsecretary of Defense, Col. Carranza did not initiate an investigation to determine whether any members of the Salvadoran military were responsible for human rights abuses.

c)   While serving as Subsecretary of Defense, Col. Carranza did not discipline or punish any members of the Salvadoran military for human rights abuses.

d)   While serving as Subsecretary of Defense, Col. Carranza did not prosecute under military law or refer to civilian courts any members of the Salvadoran military for incidents of torture or extrajudicial killing.

e)   From 1979 to 1984, the Salvadoran Constitution and the laws of El Salvador, including international agreements to which El Salvador was a party, prohibited members of the Salvadoran military from committing torture and extrajudicial killing.

f)   From May 1983 to May 1984, Col. Carranza served as Director of the Treasury Police of El Salvador.

g)   While serving as Director of the Treasury Police, Col. Carranza had the legal authority and practical ability to exert control over subordinate members of the Treasury Police.

h)   While serving as Director of the Treasury Police, Col. Carranza had the authority to discipline any subordinate who was responsible for committing a crime or violating military rules of conduct.

i)   While serving as Director of the Treasury Police, Col. Carranza did not prosecute under military law or refer to civilian courts any members of the Treasury Police for incidents of torture or extrajudicial killing.

j)   The claims of the Plaintiff Ana Patricia Chavez are the result of an event that occurred on July 26, 1980.

k)   Plaintiff Ana Patricia Chavez has resided in Van Nuys, California, for twenty-four (24) years prior to her deposition taken on December 7, 2004.  She is a permanent resident of the United States.

l)   The claims of the Plaintiff José Calderon are the result of an event that allegedly occurred on September 11, 1980.

m) Plaintiff José Calderon has resided in San Francisco, California, since February of 1981 and has been a citizen of the United States since 1996.

n) The claims of the Plaintiff Erlinda Revelo are the result of an event that allegedly occurred on November 27, 1980.

o) Plaintiff Erlinda Revelo is the only Plaintiff who now resides in El Salvador.

p) The claims of the Plaintiff Daniel Alvarado are the result of events that allegedly occurred in August 1983.

q) Plaintiff Daniel Alvarado has now resided in Sweden since April of 1986.

r) The claims of the Plaintiff Cecilia Santos are the result of events that allegedly occurred in September – October, 1980.

s) Plaintiff Cecilia Santos moved to New York from El Salvador in June of 1983 and has been in New York for twenty (20) years.

t) The Defendant, Nicolas Carranza, has been a resident of the United States since 1985.

u) The Defendant, Nicolas Carranza, has been a naturalized citizen of the United States since 1991.

v) The Defendant, Nicolas Carranza, has not concealed his identity or location since 1985 and has lived at the same residence since 1985.

w) Ana Patricia Chavez does not know the names of the individuals who committed the alleged acts claimed by her in the Complaint.

x) Cecilia Santos does not know the names of the individuals who committed the alleged acts complained of by her.

y) José Francisco Calderon does not know the names of the individuals who committed the alleged acts claimed by him in the Complaint.

z)  Erlinda Franco does not know the names of the individuals allegedly responsible for the alleged acts complained of by her in the Complaint.

## VI.    Contested Issues of Fact

1.    Issues of Fact Submitted by the Plaintiffs

a)  While serving as Subsecretary of Defense, did the defendant have the legal authority and practical ability to exert control over members of the Salvadoran military, including the Security Forces?

b)  While serving as Subsecretary of Defense, did the defendant have the authority to discipline members of the Salvadoran military, including the Security Forces, who were responsible for committing crimes or violating military rules of conduct, including human rights abuses?

c)  While serving as Subsecretary of Defense, did the defendant know, or should he have known, that members of the Salvadoran military, including the Security Forces, had committed, were committing, or were about to commit human rights abuses?

d)  While serving as Director of the Treasury Police, did the defendant know, or should he have known, that subordinates had committed, were committing, or were about to commit human rights abuses?

e)  While serving as Director of the Treasury Police, did the defendant take all reasonable and necessary measures to either prevent subordinates from committing human rights abuses or punish them after the fact?

f)  While the defendant served as Subsecretary of Defense and Director of the Treasury Police, did the Salvadoran military conduct a widespread or systematic attack against the civilian population of El Salvador?

9

g)  If the jury finds the defendant liable, what is the amount of each plaintiff's compensatory damages?

h)  If the jury finds the defendant liable for punitive damages, what is each plaintiff's punitive damages?

2.  Issues of Fact Submitted by the Defendant

a)  José Francisco Calderon was related to the Minister of Defense, José Guerillmo Garcia, but did not pursue any investigation with Garcia.

b)  Daniel Alvarado never told Nicolas Carranza that he was tortured by anyone on the occasions he was personally with him.

c)  Daniel Alvarado admitted he assassinated the United States naval attaché at the U. S. Embassy, Albert Schaufelberger.

d)  Daniel Alvarado was a member of the FPL, which claimed responsibility for the assassination of Albert Schaufelberger.

e)  The Defendant, Nicolas Carranza, was not directly involved and did not participate in any events alleged by the Plaintiffs in their Complaint.

f)  The Defendant did not have prior knowledge of the alleged events which each of the Plaintiffs complain of in their Complaint.

g)  Knowledge of the alleged events after they occurred would not have prevented the harm.

### VII.   Contested Issues of Law

1.  Issues of Law Submitted by the Plaintiffs

a)  Is the defendant liable, under the law of command responsibility, for Cecilia Santos' claim for torture?

10

b) Is the defendant liable, under the law of command responsibility, for Francisco Calderon's claims for extrajudicial killing and torture?

c) Is the defendant liable, under the law of command responsibility, for Ana Patricia Chavez' claims for extrajudicial killing, torture, and crimes against humanity?

d) Is the defendant liable, under the law of command responsibility, for Erlinda Franco's claims for extrajudicial killing and crimes against humanity?

e) Is the defendant liable, under the law of command responsibility, for Daniel Alvarado's claims for torture and crimes against humanity?

f) Is each of the plaintiffs entitled to compensatory damages?

g) Is each of the plaintiffs entitled to punitive damages?

2.    Issues of Law Submitted by the Defendant

a) Does the statute of limitations of ten (10) years applicable to each of the Plaintiffs' claims bar their recovery due to lack of timeliness?

b) Does the Doctrine of Laches or Unreasonable Delay bar the claim of the Plaintiffs for unreasonable delay in pursuing a cause of action?

c) Has the delay in Plaintiffs' filing their Complaint denied the Defendant the right of due process of law and deprived him of being able to present witnesses and documents in his defense?

d) Are the Plaintiffs barred or estopped from bringing claims against the Defendant in the United States by virtue of the Peace Accord and Amnesty Law of El Salvador, which is a sovereign nation and member of the United Nations and their acts and laws should be entitled to full faith and credit under the laws of the United States?

e)  Under the theory of command responsibility, should the administrative officer know that the alleged, non-authorized event is going to take place before liability can exist?

f)  How did the failure to investigate the causes of action alleged by the Plaintiffs be a proximate cause of the events or prevented them from taking place?

g)  What, if any, orders were given by the Defendant, which was a cause or the proximate cause of the alleged acts complained of by each Plaintiff in their Complaint.

h)  How could an investigation into the occurrences alleged by the Plaintiffs have prevented the harm or alleged acts from having occurred?

i)  What exceptional facts, after nearly twenty (20) years, exist with regard to each Plaintiff, which prevents the statute of limitations from barring their causes of action?

j)  Did the Defendant, Nicolas Carranza, conceal the Plaintiffs' causes of action from them?

k)  Did the Defendant Carranza conceal himself from any Plaintiff to prevent legal proceedings against him?

l)  Did Defendant Carranza threaten harm or injury to any of the Plaintiffs, which caused them to delay almost twenty (20) years in filing their lawsuit?

## VIII.  Exhibits

A list of exhibits to be offered into evidence by the parties is attached hereto as Exhibit A. This exhibit also indicates the parties' objections to each parties' proposed exhibits.

## IX.    Witnesses

The plaintiffs will call the following witnesses: Ana Patricia Chavez, Cecilia Santos, Francisco Calderon, Irma Calderon, Erlinda Franco, Daniel Alvarado, Juan Jose Martel, and Luis Ramirez.  The plaintiffs also will call the following witnesses as experts pursuant to Fed. R.

Evid. 702: Prof. Terry Lynn Karl, who will testify about the political history of El Salvador, including the role of the military and groups working in conjunction with the military to carry out human rights abuses and the role of the defendant within the Salvadoran government; and Col. Jose Luis Garcia, who will testify about the Salvadoran military structure and the obligations of a military commander. The plaintiffs will also call Amb. Robert White, who will testify primarily as a fact witness but who will also offer expert testimony about the Salvadoran military and political structure based on the specialized knowledge he gained as the United States Ambassador to El Salvador. The plaintiffs may call Haydee Duran, Oscar Chavez, Alma Cambara, and any witness that appears on the defendant's trial witness list.

The Defendant has provided a list of witnesses to the Plaintiffs' Attorney and filed a copy with the Court. The witnesses the Defendant will call are as follows:

1. Nicolas Carranza – address previously provided.

2. Norma Carranza – address previously provided.

3. Gladys Griffin – address previously provided.

4. Alejondro Marroquin – resident of El Salvador – personal information to be provided on request.

5. Leonel Mejia - resident of El Salvador – personal information to be provided on request.

6. Jose Araujo – information previously provided

7. David Galindo – address previously provided

The witnesses the Defendant may call are as follows:

1. Carlos Eugenio Casanova – address known to Plaintiffs' attorneys

13

2.  Julio Romero Talavera - resident of Costa Rica – additional information to be provided on request.

As stated in the Designation of Witnesses, the Defendant may call any witness designated by the Plaintiffs.

## X.      Objections to Proposed Witnesses

The plaintiffs object to the anticipated testimony of David Galindo on the grounds that it is irrelevant.  The plaintiffs will be filing a motion to exclude the testimony of David Galindo in support of this objection.  Additionally, the plaintiffs object to the anticipated testimony of Jose Araujo to the extent it purports to provide an expert opinion on subjects other than the Organic Law of National Defense or the duties of El Salvador's Subsecretary of Defense.

The Defendant objects to the expert witness, Terry Lynn Karl's testimony and opinions regarding events and alleged murders and acts allegedly performed by the military to the civilian population other than the claims made by the Plaintiffs.  The Defendant objects to her use of documents, which are hearsay and not a part of her personal knowledge by observation or personal interview.  The objection is based on relevancy, hearsay and even if remotely relevant should be excluded because it is prejudicial and highly inflammatory against the Defendant, which would outweigh probative value.

## XI.      Designations of Deposition Testimony

The designations of deposition testimony upon which the plaintiffs may rely at trial are attached as Exhibit B.

The Defendant may use the Plaintiffs' depositions in cross-examination and cannot at this time determine what parts may be read in evidence to rebut the direct testimony of any Plaintiff

14

that testifies, but the Defendant reserves the right to read parts of the depositions following the Plaintiffs' testimony as part of the Defendant's proof.

## XII.    Estimate of Anticipated Length of Trial

The parties anticipate that the trial will last approximately three weeks.

## XIII.    Statement of jury trial

The case is to be tried to a jury.

## XIV.    Interested Attorneys and Law Firms

The following is a list of the attorneys interested in the case:  Robert M. Fargarson, David R. Esquivel, Matthew J. Eisenbrandt, Carolyn Patty Blum, Matthew J. Sinback, and Stephen J. Jasper.  The Defendant's Attorney, Robert M. Fargarson, will also be assisted in the trial of the case by Bruce D. Brooke.

A copy of the letterhead of Fargarson & Brooke is attached at Exhibit C.  A copy of the list of attorneys obtained from the Bass, Berry & Sims PLC website is attached as Exhibit D.

## XV.    Special Equipment to be Used at Trial

Unless the courtroom is already equipped with a system to provide simultaneous translations, the plaintiffs intend to bring such equipment so that an interpreter may translate the proceedings in English for the Spanish-speaking plaintiffs.  The plaintiffs intend to bring laptop computers, projectors, and the accessories necessary to project digital images, such as photographs and exhibits, for the Court, counsel, witnesses, and the jury.  The plaintiffs also intend to bring easels in order to display certain exhibits.

It is so ORDERED this _18_ day of _Oct._ , 2005.

_[signature]_

Jon Phipps McCalla
UNITED STATES DISTRICT JUDGE

Respectfully submitted for entry:

_David R. Esquivel w/ permission by [signature]_

David R. Esquivel (TN Bar No. 21459)
BASS, BERRY & SIMS PLC
315 Deaderick Street, Suite 2700
Nashville, TN 37238-3001
Tel: (615) 742-6200
Fax: (615) 742-0405

Matthew J. Eisenbrandt (CA Bar No. 217335)
CENTER FOR JUSTICE & ACCOUNTABILITY
870 Market Street, Suite 684
San Francisco, CA 94102
Tel: (415) 544-0444
Fax: (415) 544-0456

Carolyn Patty Blum (MA Bar No. 046880)
CENTER FOR JUSTICE & ACCOUNTABILITY
291 West 12th Street
New York, NY 10014
Tel: (212) 989-0012
Fax: (415) 544-0456

*Counsel for Plaintiffs*

_Robert M. Fargarson w/ permission by [signature]_

Robert M. Fargarson (TN Bar No. 8420)
FARGARSON & BROOKE
65 Union Avenue, 9th Floor
Post Office Drawer 3543
Memphis, TN 38103
Tel: (901) 523-2500
Fax: (901) 523-2487

*Counsel for Defendant Nicolas Carranza*

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 101 in case 2:03-CV-02932 was distributed by fax, mail, or direct printing on October 19, 2005 to the parties listed.

---

Nicolas Carranza
6530 Red Birch Dr.
Memphis, TN 38115

Robert M. Fargarson
NEELY GREEN FARGARSON BROOKE & SUMMERS
65 Union Ave.
Ste. 900
Memphis, TN 38103--054

David R. Esquivel
BASS BERRY & SIMS PLC
315 Deaderick Street
Ste. 2700
Nashville, TN 37238--000

Matthew J. Eisenbrandt
CENTER FOR JUSTICE & ACCOUNTABILITY
870 Market St.
Ste. 684
San Francisco, CA 94102

Carolyn Patty Blum
CENTER FOR JUSTICE & ACCOUNTABILITY
291 West 12th St.
New York, NY 10014

Honorable Jon McCalla
US DISTRICT COURT